# EXHIBIT 1

# AMERICAN EXPRESS HOME EQUITY LINE OF CREDIT

| Principal $250,000.00 | Loan Date 07-19-2004 | Maturity 06-19-2019 | Loan No. | Call / Coll | Account N | Officer | Initials |
|---|---|---|---|---|---|---|---|

References in the shaded area are for our use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  ANUSHA GERALD SILVA
9717 OAKDALE AVENUE
LOS ANGELES, CA 91311

**Lender:**  American Express Bank, FSB
Home Lending Headquarters
4315 South, 2700 West
Salt Lake, UT 84184

**CREDIT LIMIT: $250,000.00**                     **DATE OF AGREEMENT: July 19, 2004**

**Introduction.** This American Express Home Equity Line of Credit ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through American Express Bank, FSB. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean American Express Bank, FSB. You agree to the following terms and conditions:

**Promise to Pay.** You promise to pay American Express Bank, FSB, or order, the total of all credit advances and FINANCE CHARGES, together with all costs and expenses for which you are responsible under this Agreement or under the "Deed of Trust" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until June 19, 2019 ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Credit Line will begin on a date, after the Opening Date, when the Agreement is accepted by us in the State of Utah, following the expiration of the right to cancel, the perfection of the Deed of Trust, the receipt of all required certificates of noncancellation, and the meeting of all of our other conditions and will continue until 30, on the last day of the monthly billing cycle in which the fifth anniversary of the opening of this account occurs. You may obtain credit advances during this period ("Draw Period"). After the Draw Period ends, the repayment period will begin andyou will no longer be able to obtain credit advances. The length of the repayment period is as follows: The repayment period will begin with the first billing cycle following the end of the Draw Period and will continue until you pay in full all amounts owing under this Agreement ("Repayment Period"). The length of the Repayment Period will depend on the balance in this account at the end of the first billing cycle in the Repayment Period, the amount of your Minimum Payment and on the Annual Percentage Rate(s) which apply. You agree that we may renew or extend the period during which you may obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.** Initially, during the Draw Period, your "Regular Payment" will equal the greater of (1) the sum of your accrued FINANCE CHARGES, credit insurance premiums, if any; and Annual and other fees, if applicable (but not including Late Charges, if any) which have accrued during the billing cycle; or (2) $25.00. ("First Payment Stream"). You will make up to 60 of these payments. Your payments will be due monthly.

Thereafter, during the Repayment Period and until the account is paid in full, your "Regular Payment" will equal the greater of (1) the sum of your accrued FINANCE CHARGES, credit insurance premiums, if any; and Annual and other fees, if applicable (but not including Late Charges, if any) which have accrued during the billing cycle, plus 1/120th of the principal balance at the end of the first billing cycle in the Repayment Period; or (2) $25.00 ("Second Payment Stream"). Your payments will be due monthly.

Your "Minimum Payment" will be the Regular Payment, plus any amounts past due and all other charges. An increase in the ANNUAL PERCENTAGE RATE may increase the amount of your Regular Payment.

You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement. If you have selected to have the payment automatically deducted from your checking account, this will occur on or before the payment due date each month.

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied to (1) all billed finance charges; (2) credit insurance premiums, if any; (3) late charges, if any; (4) annual fee, if any; (5) other fees; (6) amounts incurred to protect the security of the mortgage; (7) principal and (8) unbilled finance charges .

**Receipt of Payments.** All payments must be made by a check, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address prior to 3:00 PM Eastern Standard Time on any business day will be credited to your Credit Line as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to five (5) days after receipt.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of Two Hundred Fifty Thousand & 00/100 Dollars ($250,000.00), which will be your "Credit Limit" under this Agreement. During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you. Any credit advances in excess of your Credit Limit will not be secured by the Deed of Trust covering your principal dwelling.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Deed of Trust or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Deed of Trust for this transaction. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

    **Credit Line Checks.** Writing a preprinted "Convenience Check" that we will supply to you.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor Convenience Checks in the following circumstances:

    **Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Convenience Check.

    **Post-dated Checks.** Your Convenience Check is post-dated. If a post-dated Convenience Check is paid and as a result any other check is returned or not paid, we are not responsible.

    **Stolen Checks.** Your Convenience Checks have been reported lost or stolen.

    **Unauthorized Signatures.** Your Convenience Check is not signed by an "Authorized Signer" as defined below.

    **Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Convenience Check.

If we pay any Convenience Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Convenience Check. The Convenience Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Convenience Checks along with your periodic billing statements; however, your use of each Convenience Check will be reflected on your periodic statement as a credit advance. We do not "certify" Convenience Checks drawn on your Credit Line.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

    **Credit Line Convenience Check Limitations.** There are no transaction limitations for the writing of Convenience Checks.

# Exhibit 1

## AMERICAN EXPRESS HOME EQUITY LINE OF CREDIT
### (Continued)

Page 2

**Authorized Signers.** The words "Authorized Signer" on Convenience Checks as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

**Lost Convenience Checks.** If you lose your Convenience Checks or if someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (800) 297-5626. You also can notify us at our address shown at the beginning of this Agreement.

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein: a Deed of Trust dated July 19, 2004, to a trustee in favor of us on real property located in LOS ANGELES County, State of California.

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Deed of Trust, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Right of Setoff.** To the extent permitted by applicable law, we reserve a right of setoff in all your accounts with us (whether checking, savings, or some other account), including without limitation, all accounts you may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. To authorize us, to the extent permitted by applicable law, to charge or setoff all sums owing on this Agreement against any and all such accounts.

**Periodic Statements.** If you have a balance owing on your Credit Line or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A daily FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "average daily balance" method. To get the average daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances and subtract any payments or credits and any unpaid FINANCE CHARGES. This gives us a daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "average daily balance."

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described herein. Then we multiply by the number of days in the billing cycle. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows. We start with an independent index which is the "Prime Rate" as accurately published in the money rates section of the Wall Street Journal (the "Index"). We will use the most recent Index value available to us as of the last business day of the previous calendar month to determine any ANNUAL PERCENTAGE RATE adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Credit Line Account, we may designate a substitute index after notice to you. To determine the Periodic Rate that will apply to your First Payment Stream, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE for your First Payment Stream. To determine the Periodic Rate that will apply to your Second Payment Stream, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE for your Second Payment Stream. The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Any increase in the Periodic Rate will take the form of higher payment amounts. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the Index will take effect monthly. In no event will the corresponding ANNUAL PERCENTAGE RATE be more than the lesser of 18.000% or the maximum rate allowed by applicable law. Today the Index is 4.000% per annum, and therefore the initial Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are as stated below:

### Current Rates for the First Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 1.750 % | 5.750 % | 0.01575 % |

### Current Rates for the Second Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 1.750 % | 5.750 % | 0.01575 % |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period.

**Conditions Under Which Other Charges May Be Imposed.** You agree to pay all the other fees and charges related to your Credit Line as set forth below:

**Annual Fee.** A nonrefundable Annual Fee of $50.00 will be charged to your Credit Line at the following time: The Annual Fee will be charged to your Account on the first day of each billing cycle immediately following each anniversary of the Account during the Draw Period.

**Returned Items.** You may be charged $20.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Overlimit Charge.** Your Credit Line Account may be charged $15.00 if you cause your Credit Line Account to go over your Credit Limit. This includes writing a Convenience Check in excess of your available balance.

**Late Charge.** Your payment will be late if it is not received by us within 16 days after the "Payment Due Date" shown on your periodic statement. If your payment is late we may charge you 5.000% of the payment or $20.00, whichever is greater.

**Other Charges.** Your Credit Line Account may be charged the following other charges: Returned Line of Credit Check Fee. The amount of this other charge is: $20.00. Your Credit Line Account may be assessed a charge if we decide to return a check drawn on your Account due to the account being suspended, overlimit or in default.

**Security Interest Charges.** You agree to pay all security interest charges related to your Credit Line as set forth below:

| | |
|---|---|
| Recording Fees | $58.00 |
| Total | $58.00 |

**Lender's Rights.** Under this Agreement, we have the following rights:

**Termination and Acceleration.** We can terminate your Credit Line Account and require you to pay the entire outstanding balance in one

Exhibit 1

## AMERICAN EXPRESS HOME EQUITY LINE OF CREDIT
### (Continued)

Page 3

payment, and charge you certain fees, if any of the following happen: (1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Credit Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker. No default will occur until we mail or deliver a notice of default to you, so you can restore your right to credit advances.

(4) We are precluded by government action from imposing the ANNUAL PERCENTAGE RATE provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing system). If the Index is no longer available, the new Index and margin. The new Index will have an historical movement substantially similar to the original Index, and the new Index and margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the rate in effect at the time the original index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum ANNUAL PERCENTAGE RATE under your Credit Line Account is reached.

**Collection Costs.** We may hire or pay someone else to help collect this Agreement if you do not pay. You will pay us that amount. This includes, subject to any limits under the Utah Consumer Credit Code, our reasonable attorneys' fees, if we refer the matter to an attorney, whether or not our salaried employee, and our legal expenses, whether or not there is a lawsuit, including without limitation all reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, you also will pay any court costs, in addition to all other sums provided by law.

**Rate Increase.** In addition to our other rights during termination and acceleration, we may increase the variable ANNUAL PERCENTAGE RATE under this Agreement to 18,000 percent per annum. The ANNUAL PERCENTAGE RATE will not exceed the maximum rate permitted by applicable law. If we do not increase the ANNUAL PERCENTAGE RATE upon termination or acceleration of your Credit Line Account, it will continue at the variable rate in effect as of the date of termination or acceleration of your Credit Line Account.

**Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all Convenience Checks and any other access devices. Any use of Convenience Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Convenience Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us and return all Convenience Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and affect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: American Express Bank, FSB, Consumer Loan Center, 2730 Liberty Avenue Pittsburgh, PA 15222.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Annual Review.** You agree that you will provide us with a current financial statement, a new credit application, or both, annually, on forms provided by us. Based upon this information we will conduct an annual review of your Credit Line Account. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense. You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Deed of Trust. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Sharing Information with Affiliates and Others.** Under the fair Credit Reporting Act, we have the right to share information about our experiences or transactions with you. Unless you instruct otherwise, we also have the right to share any other information about you with any of our affiliates (persons related by common ownership or affiliate by corporate control, now or in the future) either directly or for example through a central database. This other information may include but is not limited to application information, credit reports from consumer reporting agencies, and any other information we have about you. If you do not want us to share this other information with our affiliates, you can direct us not to by writing to us at the following address:

American Express Bank, FSB
Attn: Centralized Customer Assistance
2730 Liberty Avenue
Pittsburgh, PA 15222

**Governing Law.** This Agreement will be governed by and interpreted in accordance with federal law and the laws of the State of Utah. This Agreement has been accepted by us in the State of Utah.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

# Exhibit 1

3

## AMERICAN EXPRESS HOME EQUITY LINE OF CREDIT
### (Continued)

Page 4

**Interpretation.** You agree that this Agreement, together with the Deed of Trust, is the best evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Deed of Trust or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Arbitration.** we and You agree that all disputes, claims and controversies between us whether individual, joint, or class in nature, arising from this Agreement or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of Endispute, Inc., d/b/a J.A.M.S./ENDISPUTE or its successor in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Property shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Property, including any claim to rescind, reform, or otherwise modify any agreement relating to the Property, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Agreement shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "When Your Home Is On the Line: What You Should Know About Home Equity Lines of Credit," given with the application.

BORROWER:

X _____
ANUSHA GERALD SILVA

# Exhibit 1

4

**AMERICAN EXPRESS HOME EQUITY LINE OF CREDIT**
(Continued)                                                                    Page 5

## BILLING ERROR RIGHTS

### YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at

    American Express Bank, FSB
    Consumer Loan Center
    2730 Liberty Avenue
    Pittsburgh, PA  15222

or at the address listed on your bill.  Write to us as soon as possible.  We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared.  You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

    Your name and account number.

The dollar amount of the suspected error.

Describe the error and explain, if you can, why you believe there is an error.  If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong.  To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then.  Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent.  We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit.  You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount.  If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount.  In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent.  However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill.  And, we must tell you the name of anyone we reported you to.  We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

LASER PRO Lending, Ver. 5.34.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2004.  All Rights Reserved.   - UT  T:\CFI\PL\D29.FC  TR-10191033  PR-AXHELOC

# Exhibit 1

5

EB# 

# ALLONGE TO NOTE

BORROWER(S):   ANUSHA GERALD SILVA

DATE OF NOTE:   JULY 19, 2004

AMOUNT OF NOTE:   $250,000.00

FOR VALUABLE CONSIDERATION, WITHOUT RECOURSE THE UNDERSIGNED HEREBY ENDORSES ALL OF
THEIR RIGHTS, TITLE AND INTEREST IN AND TO THE SAID NOTE TO:

Said Note is secured by a Mortgage/ Deed of Trust of the same amount on real property located at

9717 OAKDALE AVENUE

LOS ANGELES, CA 91311

_Johnnie Roberts_
Signature name

AMERICAN EXPRESS NATIONAL BANK s/b/m AMERICAN EXPRESS BANK, FSB

Print Name: Denise D. Roberts

Title: VP, Finance

# Exhibit 1

6

# EXHIBIT 2





**This page is part of your document - DO NOT DISCARD**

04 2297865

```
RECORDED/FILED IN OFFICIAL RECORDS
        RECORDER'S OFFICE
      LOS ANGELES COUNTY
          CALIFORNIA

   11:41 AM  SEP  07  2004
```

# TITLE(S) :
_____



L E A D     S H E E T

| FEE | | D.T.T |
|-----|---|-------|

```
FEE $ 48 QQ
DAF $  6      3T
C-20         10
```

CODE
20

CODE
19

CODE
9____

© NOTIFICATION SENT

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**    **Number of AIN's Shown**



**THIS FORM NOT TO BE DUPLICATED**

# Exhibit 2

**RECORDATION REQUESTED BY:**
American Express Bank, FSB
Home Lending Headquarters
4315 South, 2700 West
Salt Lake, UT 84184

2

04 2297865

**WHEN RECORDED MAIL TO:**
American Express Bank, FSB
Consumer Loan Center (P5-PCLC-01-1)
2730 Liberty Avenue
Pittsburgh, PA 15222

**SEND TAX NOTICES TO:**
ANUSHA GERALD SILVA
9717 OAKDALE AVENUE
LOS ANGELES, CA 91311

FOR RECORDER'S USE ONLY

83

## DEED OF TRUST

### Variable Interest Rate
### Revolving Line of Credit

**MAXIMUM LIEN.** The lien of this Deed of Trust shall not exceed at any one time $250,000.00.

**THIS DEED OF TRUST** is dated July 19, 2004, among ANUSHA GERALD SILVA, whose address is 9717 OAKDALE AVENUE, LOS ANGELES, CA 91311; A SINGLE MAN ("Trustor"); American Express Bank, FSB, whose address is Home Lending Headquarters, 4315 South, 2700 West, Salt Lake, UT 84184 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and PNC Bank, National Association, whose address is 2730 Liberty Avenue, Pittsburgh, PA 15222 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in LOS ANGELES County, State of California:

   See Attached Exhibit A, which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

**The Real Property** or its address is commonly known as 9717 OAKDALE AVENUE, LOS ANGELES, CA 91311. The Assessor's Parcel Number for the Real Property is 2761-017-028

**REVOLVING LINE OF CREDIT.** This Deed of Trust secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Trustor so long as Trustor complies with all the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Trustor and Lender that this Deed of Trust secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in this Deed of Trust and any intermediate balance.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF TRUSTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

   **Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

# Exhibit 2

8

**DEED OF TRUST**
(Continued)

04  2297865    3

Page 2

**Duty to Maintain.** Trustor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $10,000.00. Trustor will upon request of Lender furnish to Lender

# Exhibit 2

**DEED OF TRUST**
(Continued)

04 2297865

Page 3

advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such other hazard and liability insurance as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Trustor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Trustor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Property also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Trustor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Trustor's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to an existing lien. Trustor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such


Exhibit 2

**DEED OF TRUST**
**(Continued)**

04 2297865

Page 4

indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Trustor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Trustor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and

# Exhibit 2

**DEED OF TRUST**      **04 2297865**
**(Continued)**

Page 5

---

shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Trustor will be in default under this Deed of Trust if any of the following happen: (A) Trustor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Trustor's income, assets, liabilities, or any other aspects of Trustor's financial condition. (B) Trustor does not meet the repayment terms of the Credit Agreement. (C) Trustor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** All of Lender's rights and remedies shall be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Trustor's obligations under this Deed of Trust, after Trustor's failure to do so, that decision by Lender will not affect Lender's right to declare Trustor in default and to exercise Lender's remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Credit Agreement, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Credit Agreement or by law.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

# Exhibit 2

**DEED OF TRUST**
**(Continued)**

04 2297865

Page 6

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of LOS ANGELES County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors. It will be Trustor's responsibility to tell the others of the notice from Lender.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** What is written in this Deed of Trust and in the Related Documents is Trustor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Arbitration.** Lender and Trustor agree that all disputes, claims and controversies between us whether individual, joint, or class in nature, arising from this Deed of Trust or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of Endispute, Inc., d/b/a J.A.M.S./ENDISPUTE or its successor in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Property shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Property, including any claim to rescind, reform, or otherwise modify any agreement relating to the Property, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Trustor and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including

# Exhibit 2

*8*

**DEED OF TRUST**    04 2297865
(Continued)                                          Page 7

---

counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Deed of Trust shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by and interpreted in accordance with federal law and the laws of the State of Utah, except and only to the extent of procedural matters related to the perfection and enforcement of Lender's rights and remedies against the Property, which will be governed by the laws of the State of California. However, if there ever is a question about whether any provision of this Deed of Trust is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction which is evidenced by the Credit Agreement and this Deed of Trust has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Utah.

**No Waiver by Lender.** Trustor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Trustor will not have to comply with the other provisions of this Deed of Trust. Trustor also understands that if Lender does consent to a request, that does not mean that Trustor will not have to get Lender's consent again if the situation happens again. Trustor further understands that just because Lender consents to one or more of Trustor's requests, that does not mean Lender will be required to consent to any of Trustor's future requests. Trustor waives presentment, demand for payment, protest, and notice of dishonor. Trustor waives all rights of exemption from execution or similar law in the Property, and Trustor agrees that the rights of Lender in the Property under this Deed of Trust are prior to Trustor's rights while this Deed of Trust remains in effect.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.** The word "Beneficiary" means American Express Bank, FSB, and its successors and assigns.

**Borrower.** The word "Borrower" means ANUSHA GERALD SILVA and includes all co-signers and co-makers signing the Credit Agreement.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated July 19, 2004, **with credit limit of $250,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Deed of Trust is June 19, 2019.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on

# Exhibit 2

### DEED OF TRUST    04 2297865
### (Continued)                                          Page 8

the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means American Express Bank, FSB, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means PNC Bank, National Association, whose address is 2730 Liberty Avenue, Pittsburgh, PA 15222 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means ANUSHA GERALD SILVA.

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE CREDIT AGREEMENT SECURED BY THIS DEED OF TRUST.

TRUSTOR:

X _____
   ANUSHA GERALD SILVA

---

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _CA_                                    )
                                                 ) SS
COUNTY OF _LOS ANGELES_                           )

On _7/23_____, 20_04_ before me, _KEITH R. CASEY_____,
personally appeared **ANUSHA GERALD SILVA, A SINGLE MAN**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Keith R. Casey_____

KEITH R. CASEY
Commission # 1313564
Notary Public - California
Los Angeles County
My Comm. Expires Jul 18, 2005

(Seal)

## Exhibit 2

15

/6

DEED OF TRUST       04 2297865
(Continued)                                    Page 9

**(DO NOT RECORD)**
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Credit Agreement secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____.

Date: _____        Beneficiary: _____

                                                By: _____

                                                Its: _____

LASER PRO Lending, Ver. 5.24.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2004. All Rights Reserved. - CA/UT T:\CFI\LPL\G01.FC TR-1019\G28 PR-AXHELOC

# Exhibit 2

16

04 2297865

**EXHIBIT A**

**LEGAL DESCRIPTION:**

THE FOLLOWING DESCRIBED REAL PROPERTY IN THE CITY OF LOS ANGELES, COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA: LOT 69, OF TRACT NO. 24277, AS PER MAP
RECORDED IN BOOK 633, PAGES 61-62 OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

# Exhibit 2

17

# EXHIBIT 3




**This page is part of your document - DO NOT DISCARD**

06 2865792

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

8:01 AM DEC 26 2006

**TITLE(S) :** _____





L E A D    S H E E T

**FEE**                                                    D.T.T.

Code 01 - 07.00        Code A017 - 001
Code 20 - 02.00

**CODE
20**

**CODE
19**

**CODE
9**_____    _Grand Total = $9.00_              _Page Count = 1_

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**        **Number of AIN's Shown**




**THIS FORM IS NOT TO BE DUPLICATED**

# Exhibit 3

18

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING
[AND WHEN RECORDED MAIL TO]
Nationwide Title Clearing
2100 Alt. 19 North
Palm Harbor, FL 34683

06  2865792

Assignor#: 
Effective Date: 11/03/2006

**CORPORATE ASSIGNMENT OF DEED OF TRUST**

**FOR GOOD AND VALUABLE CONSIDERATION,**
the sufficiency of which is hereby acknowledged, the undersigned, **AMERICAN EXPRESS
BANK, FSB, WHOSE ADDRESS IS MAIL CODE 02-01-56 4315 SOUTH, 2700 WEST, SALT LAKE, UT
84184, (ASSIGNOR),** by these presents does convey, grant, sell, assign, transfer
and set over the described Deed of Trust together with the certain note(s)
described therein, without recourse, representation or warranty, together with all
right, title and interest secured thereby, all liens, and any rights due or to
become due thereon to **AMERIPRISE BANK, FSB, WHOSE ADDRESS IS 7 WTC 250 GREENWICH
STREET SUITE 3900, NEW YORK, NY 10007, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**
Said Deed made by **ANUSHA GERALD SILVA** and recorded on 09/07/2004  as Inst# 04
2297865  in Book    Page    in the office of the LOS ANGELES  County Recorder, CA.

Dated: 09/26/2006
AMERICAN EXPRESS BANK, FSB

By:_____
    MARY JO MCGOWAN /   VICE PRESIDENT

STATE OF FLORIDA              COUNTY OF PINELLAS
On 09/26/2006  before me, MARIA LEONOR GERHOLDT DD 0434521 , Notary Public,
personally appeared MARY JO MCGOWAN , personally known to me (or proved to me on
the basis of satisfactory evidence) to be the person whose name is subscribed to
the within instrument and acknowledged to me that he/she executed the same in
his/her authorized capacity, and that by his/her signature on the instrument the
person, or entity upon behalf of which the person acted, executed the same.
WITNESS MY hand and official seal.

_____
MARIA LEONOR GERHOLDT DD 0434521    Notary Public

My Commission expires: 05/26/2009
Prep by: J. Lesinski/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152



          PNCAE

# Exhibit 3

 

**This page is part of your document - DO NOT DISCARD**



## 20121874369



Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/06/12 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |

 



L E A D S H E E T



201212060990001

00006878030



004481458

SEQ:
01

ERDS - 8:00AM



THIS FORM IS NOT TO BE DUPLICATED          E12



E534015

# Exhibit 3

20

Recording Requested By:
EVERBANK

And When Recorded Mail To:
EverBank
301 W Bay Street
Jacksonville, FL 32202

_____    Space above for Recorder's use _____

Customer#: 1   Service#: ▮▮▮▮▮▮    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Loan#: ▮▮▮▮▮▮▮

## ASSIGNMENT OF DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **AMERIPRISE BANK, FSB, 5226 AMERIPRISE FINANCIAL CNTR, MINNEAPOLIS, MN  55474-0000.** For VALUE RECEIVED, The undersigned hereby grants, assigns, and transfers to, **RIVERSOURCE LIFE INSURANCE COMPANY, 227 AMERIPRISE FINANCIAL CNTR, MINNEAPOLIS, MN  55474-0000** assignee, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.  Said Deed of trust for **$250,000.00** is recorded in the State of **CALIFORNIA**, County of **LOS ANGELES** Official Records, dated **JULY 19, 2004** and recorded on **SEPTEMBER 07, 2004**, as Instrument No. **04 2297865**, in Book No. —, at Page No. —. Executed by **ANUSHA GERALD SILVA, A SINGLE MAN**, as trustors, **PNC BANK, NATIONAL ASSOCIATION**, as trustee and, **AMERICAN EXPRESS BANK, FSB** as the original beneficiary. Legal Description: **As more fully described in said Deed of Trust.**

Date: **NOVEMBER 13, 2012**
**AMERIPRISE BANK, FSB**

By: _____
    Abigail Roe, Vice President
State of / **FLORIDA**                              }
County of / **DUVAL**                              } ss.

On **NOVEMBER 13, 2012** , before me, **Kesha Sinclair**, a Notary Public, personally appeared   **Abigail Roe** , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA**  that the foregoing paragraph is true and correct.
Witness my hand and official seal.

_____
(Notary Name): **Kesha Sinclair**

KESHA  SINCLAIR
NOTARY PUBLIC
STATE OF FLORIDA
Comm# EE846379
Expires 10/24/2016

# Exhibit 3

Recording Requested By:
**TIAA BANK**

And When Recorded Mail To:
**EverBank, CC309**
**301 West Bay Street**
**Jacksonville, FL 32202**

_____ Space above for Recorder's use _____

Customer#: **1**   Service#: ▮▮▮▮▮▮

Loan#: ▮▮▮▮▮▮▮

## ASSIGNMENT OF DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **RIVERSOURCE LIFE INSURANCE COMPANY, 227 AMERIPRISE FINANCIAL CNTR, MINNEAPOLIS, MN  55474-0000**, for VALUE RECEIVED, the undersigned hereby assigns and transfers to **TIAA FSB DBA TIAA BANK, FKA EVERBANK, 301 WEST BAY STREET, JACKSONVILLE, FL  32202-0000** assignee, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.  Said Deed of trust for **$250,000.00** is recorded in the State of **CALIFORNIA**, County of **LOS ANGELES** Official Records, dated **JULY 19, 2004** and recorded on **SEPTEMBER 07, 2004**, as Instrument No. 04 2297865, in Book No. ---, at Page No. ---.
Executed by **ANUSHA GERALD SILVA, A SINGLE MAN**, as trustors, **PNC BANK, NATIONAL ASSOCIATION**, as trustee and, **AMERICAN EXPRESS BANK, FSB** as the original beneficiary. Legal Description: **As more fully described in said Deed of Trust.**
Date: 11-8-18

**RIVERSOURCE LIFE INSURANCE COMPANY**

By: _____
  **Timothy Simmer, Assistant Vice President**
State of     **FLORIDA**        }
County of    **DUVAL**        } ss.

The foregoing instrument was acknowledged before me this 11-8-18 _____ by **Timothy Simmer** who is (check one) __✓__ personally known to me or ____ Have produced or proved to me through satisfactory evidence of identification, Type of identification _____, who acknowledged that he/she is the person shown as **Assistant Vice President** of **RIVERSOURCE LIFE INSURANCE COMPANY**, a corporation, respectively, the principle, and acknowledged that he/she, in his/her capacities, executed this instrument as the act of the principle for the purposes therein mentioned.

  Witness my hand and official seal on the date hereinabove set forth.

_____
(Notary Name): **Jeaney Golden**

Jeaney Golden
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG168829
Expires 4/5/2022

FLORIDA NOTARY ASSOC. SINCE 1976

# Exhibit 3

# EXHIBIT 4

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Anusha Gerard Silva** |
| | First Name    Middle Name    Last Name |
| Debtor 2 (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 106D
# Schedule D: Creditors Who Have Claims Secured by Property                 12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☐ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A Amount of claim Do not deduct the value of collateral. | Column B Value of collateral that supports this claim | Column C Unsecured portion If any |
|---|---|---|---|---|
| **2.1 Bank of America** Creditor's Name | Describe the property that secures the claim: | $162,200.00 | $643,000.00 | $0.00 |

**9717 Oakdale Avenue Chatsworth, CA 91311  Los Angeles County**

**4909 Savarese Circle Tampa, FL 33634**
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☒ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred  5/1/2002        Last 4 digits of account number    XXXX

| **2.2 Everbank** Creditor's Name | Describe the property that secures the claim: | $172,585.00 | $643,000.00 | $0.00 |
|---|---|---|---|---|

**9717 Oakdale Avenue Chatsworth, CA 91311  Los Angeles County**

**PO Box 2167 Jacksonville, FL 32232-0004**
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☒ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred  140399xxxx        Last 4 digits of account number    6774

Exhibit 4

Debtor 1  __Anusha      Gerard        Silva__      Case number (if known) _____
          First Name   Middle Name   Last Name

| 2.3 | **Pacific Western Bank** | Describe the property that secures the claim: | $391,772.00 | $643,000.00 | $83,557.00 |

Creditor's Name

**9717 Oakdale Avenue Chatsworth,
CA 91311  Los Angeles County**

**610 Alamo Pintado Road
Solvang, CA 93463**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that
apply.

☐ Contingent

☐ Unliquidated

☐ Disputed

**Who owes the debt?** Check one.

☒ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this claim relates to a
community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)

☒ Judgment lien from a lawsuit

☐ Other (including a right to offset) _____

Date debt was incurred  __06/05/2017__      Last 4 digits of account number   __5458_____

|  | Add the dollar value of your entries in Column A on this page. Write that number here: | $726,557.00 |
|  | If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $726,557.00 |

**Part 2:**  **List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is
trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more
than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any
debts in Part 1, do not fill out or submit this page.

☐   Name, Number, Street, City, State & Zip Code      On which line in Part 1 did you enter the creditor?  __2.3__
**Mirman & Bubman**
**21860 Burbank Blvd**                                Last 4 digits of account number ___
**Woodland Hills, CA 91367**

# Exhibit 4

# EXHIBIT 5

**SERVICELINK**

**Broker Price Opinion Exterior**

## Client Information

| | |
|---|---|
| Client: TIAA Bank - Loss Mitigation | Portfolio / Project Name: |
| Order Number: ███████ | Alternate Loan Number: |
| Loan Number: XXXXXX6774 | Inspection Date: 3/1/2019 |
| Owner / Borrower: SILVA | Inspection Type: Exterior |
| Subject Address: 9717 OAKDALE AVENUE | Contact: SILVA |
| CHATSWORTH, CA  91311 | Contact Phone: |
| Preparer's Name: Gary Martin | Company Name: TMG Properties |
| Preparer's License Number: 00935480 | Broker's Name: Gary Martin |
| Preparer's Contact Number: 818-709-2525 | Broker's License Number: 00935480 |
| Preparer's Distance From the Subject (Driving): 3 | |

## Subject Tax and Sale Information

| | |
|---|---|
| Estimated Tax Assessed  Value Date: 3/1/2019 | Last Known Sale Date: 7/20/2000 |
| Tax Assessed Value: $369,467.00 | Last Known Sale Price: $279,000.00 |

## Neighborhood Information

| | |
|---|---|
| Predominant Occupancy: Owner | Average Market Time of Sales: 90 |
| No. of Homes in Direct Competition: 10 | Price Range (Low to High): $550,000.00    to   $700,000.00 |
| Density: Suburban | Predominant Value: $630,000.00 |
| Zoning: Residential | Property Values Trend: Stable |
| Property Maintenance: Average | Market Rent: 3000 |
| | Market Rent Trend: Stable / 0.00%  annually |

Market / Neighborhood   Subject property is located in a residential neighborhood and conforms to it. Neighborhood market is mainly comprised by Standard Sale
Comments:  Properties. Best comparables used that show current market trends in neighborhood.

## Subject Property

| | |
|---|---|
| Listed in Last 12 Months: No | Currently Listed: No |
| Vacant: No | List Price: $0.00 |
| Secured: Yes | Listing Agent Name: |
| Conform to Neighborhood  Yes | Listing Agent Phone: |
| Estimated Land Price: $227,641.00 | Days on Market: 0 |
| Mobile Home Permanently Attached and Taxed as Real Estate: No | |

Problem for Resale: No

Environmental    No
Problem:

Subject Data Source(s):    ☒ Tax Records    ☐ SiteXdata    ☐ MLS #         ☐ RealQuest    ☐ REDLINK    ☐ Estimated    ☐ Other

Explanation of
Estimated or Other
Sources:

Positive Subject   Subject property is a 2sty traditional SFR that appears to be in average marketable condition. No visible signs of damages noted at time of
Comments:  inspection.

Negative Subject   Subject property does not appear to have any negative influences affecting property value or marketability.
Comments:

**Exhibit 5**

# SERVICELINK

**Broker Price Opinion Exterior**

Order #: ▮▮▮▮▮▮    Loan #:  XXXXXX6774    Client:    TIAA Bank - Loss Mitigation

## Comparative Sale Information

| | SUBJECT ADDRESS | COMPARABLE 1 | COMPARABLE 2 | COMPARABLE 3 |
|---|---|---|---|---|
| Street Address: | 9717 OAKDALE AVENUE | 19861 citronia St | 20138 Lassen St | 9616 Oakdale Ave |
| City, State, Zip: | CHATSWORTH, CA   91311 | Chatsworth, CA   91311 | Chatsworth, CA   91311 | Chatsworth, CA   91311 |
| Property Type: | Single Family | Single Family | Single Family | Single Family |
| Property Style: | 2 Story | 2 Story | 1 Story | 1 Story |
| Number of Units: | 1 | 1 | 1 | 1 |
| Proximity to Subject: | | 0.07 Miles | 0.60 Miles | 0.15 Miles |
| Sale Date: | 7/20/2000 | 8/31/2018 | 8/27/2018 | 2/26/2019 |
| Sold Price: | $279,000.00 | $580,000.00 | $640,000.00 | $657,650.00 |
| Days on Market: | | 1 | 25 | 7 |
| Location: | Average | Average | Average | Average |
| Lot Size: | 7568 Square Feet | 7454 Square Feet | 8265 Square Feet | 7511 Square Feet |
| Lot Size is: | Typical | Typical | Typical | Typical |
| Age in Years: | 60 | 60 | 60 | 60 |
| Condition: | Average | Average | Average | Average |
| Total Rooms: | 5 | 5 | 5 | 6 |
| Bedrooms: | 3 | 3 | 3 | 4 |
| Bathrooms: | 2 Full 0 Half | 2 Full 0 Half | 2 Full 0 Half | 2 Full 0 Half |
| Above Grade Sq. Footage: | 1886 | 1894 | 1805 | 1599 |
| Total Below Grade Sq.Ft.: | 0 | 0 | 0 | 0 |
| Garage: | 2.00 car / Attached | 2.00 car / Attached | 2.00 car / Attached | 2.00 car / Attached |
| Carport: | 0.00 car / NA | 0.00 car / NA | 0.00 car / NA | 0.00 car / NA |
| Comparison to Subject: | | Equal | Equal | Equal |
| Comparable Data Source: | | MLS | MLS | MLS |
| MLS Listing Number: | | SR18203732 | SR18155638 | SR19020601 |

| Explanation of Estimated or Other responses above: | |
|---|---|

| Comments on Comparable 1: | 2sty traditional SFR equal in GLA and in overall room count to the subject property. Standard sale property. |
|---|---|

| Comments on Comparable 2: | 1sty traditional SFR equal in GLA and in overall room count to the subject property. Standard sale property. |
|---|---|

| Comments on Comparable 3: | 1sty traditional SFR inferior in GLA and superior in overall room count to the subject property. Standard sale property. |
|---|---|

## Exhibit 5

# SERVICELINK

**Broker Price Opinion Exterior**

Order #: ▊▊▊▊        Loan #:  XXXXXX6774        Client:    TIAA Bank - Loss Mitigation

## Comparative Listing Information

| | SUBJECT ADDRESS | COMPARABLE 1 | COMPARABLE 2 | COMPARABLE 3 |
|---|---|---|---|---|
| Street Address: | 9717 OAKDALE AVENUE | 20105 Septo St | 9940 Laramie Ave | 9648 Casaba Ave |
| City, State, Zip: | CHATSWORTH, CA    91311 | Chatsworth, CA    91311 | Chatsworth, CA 91311 | Chatsworth, CA    91311 |
| Property Type: | Single Family | Single Family | Single Family | Single Family |
| Property Style: | 2 Story | 2 Story | 1 Story | 1 Story |
| Number of Units: | 1 | 1 | 1 | 1 |
| Proximity to Subject: | | 0.90 Miles | 0.93 Miles | 0.73 Miles |
| Listing Date: | | 1/13/2019 | 1/24/2019 | 2/1/2019 |
| Days on Market: | | 13 | 37 | 29 |
| Listing Price: | | $575,000.00 | $618,500.00 | $665,000.00 |
| Location: | Average | Average | Average | Average |
| Lot Size: | 7568 Square Feet | 11483 Square Feet | 7512 Square Feet | 7500 Square Feet |
| Lot Size is: | Typical | Typical | Typical | Typical |
| Age in Years: | 60 | 43 | 58 | 60 |
| Condition: | Average | Average | Average | Average |
| Total Rooms: | 5 | 7 | 5 | 9 |
| Bedrooms: | 3 | 4 | 3 | 6 |
| Bathrooms: | 2 Full 0 Half | 3 Full 0 Half | 2 Full 0 Half | 3 Full 0 Half |
| Above Grade Sq.Footage: | 1886 | 2109 | 1610 | 2095 |
| Total Below Grade Sq.Ft.: | 0 | 0 | 0 | 0 |
| Garage: | 2.00 car / Attached | 2.00 car / Attached | 2.00 car / Attached | 2.00 car / Attached |
| Carport: | 0.00 car / NA | 0.00 car / NA | 0.00 car / NA | 0.00 car / NA |
| Comparison to Subject: | | Equal | Equal | Equal |
| Comparable Data Source: | | MLS | MLS | MLS |
| MLS Listing Number: | | SR19008727 | SR19018285 | PW19017176 |

| Explanation of Estimated or Other responses above: | |
|---|---|

| Comments on Comparable 1: | 2sty traditional SFR superior in GLA and in overall room count to the subject property. Standard sale property. |
|---|---|

| Comments on Comparable 2: | 1sty traditional SFR inferior in GLA and equal in overall room count to the subject property. Standard sale property. |
|---|---|

| Comments on Comparable 3: | 1sty traditional SFR superior in both GLA and in overall room count to the subject property. Standard sale property. |
|---|---|

## Addendum

Any Additional comments regarding market area, conditions, area growth or decline, crime activity, hazards, repairs and the like.

Subject property is located in a residential neighborhood and conforms to it. Upon inspection, subject property and its neighboring homes appear to be free and clear of any natural disaster related damage.

# Exhibit 5

**SERVICELINK**

**Broker Price Opinion Exterior**

Order #: ▮▮▮▮▮▮     Loan #: XXXXXX6774     Client: TIAA Bank - Loss Mitigation

| Estimates of Price | | |
|---|---|---|

| | | |
|---|---|---|
| Discuss how you arrived at these prices: | Pricing based on current available comps as near to the subject as possible. Best available comps in the neighborhood most similar to the subject property in all characteristics were used to complete this order. | |

| | | | |
|---|---|---|---|
| As Is Price Opinion: | $635,000.00 | As Repaired Price Opinion: | $635,000.00 |
| As Is Quick Sale: | $630,000.00 | As Repaired Quick Sale: | $630,000.00 |
| As Is Suggested List: | $640,000.00 | As Repaired Suggested List: | $640,000.00 |
| | | Estimated Cost to Repair: | $0.00 |

Average Market Time of Sale (listing date to contract date):     90

ServiceLink's Broker Price Opinion offers an opinion derived from analysis based on inspection of the subject property and analysis of the local market data as performed by a licensed real estate professional. Information in the report may be gathered from multiple sources, including but not limited to multiple listing services (MLS), public records, public records data services, city/county office websites, proprietary files, mapping services, or may be provided by the client. In some cases information on the subject property may be limited or unavailable, and, in some instances, may be derived from an exterior inspection of the property. The information provided assumes, unless otherwise stated in the report, the subject property is in average condition, contains no environmental, structural, or title related defects, the real property interests are fee simple, and the information relied upon is accurate. The report is based upon data that is deemed generally acceptable for products of this type. The analysis of an interest in real property for ownership or collateral purposes is prepared for the above named client only. The intended use is to assist the designated client in making an independent, internal decision regarding the subject property. The use of this report by anyone other than the client for any purpose is not permitted or authorized by ServiceLink Valuation Solutions, LLC, including its subsidiaries and affiliates ("ServiceLink"). Any other use of the report by any other party is prohibited. This document is not an appraisal. The product is provided "AS IS", and no guarantee or warranty is provided. ServiceLink will not be liable for any loss, damage or injury arising out of, or in conjunction with, the client's utilization of the information contained in this report. If this report is intended to be used for loan origination purposes, the loan transaction value must be $250,000.00, or less, as required by Title XI of FIRREA.

## Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained.

| Property Map | | |
|---|---|---|

If MapPoint was unable to locate the property(s), distances from comparable property(s) were estimated.

## Exhibit 5

**SERVICELINK**

**Broker Price Opinion Exterior**

Order #: ▮▮▮▮▮▮▮    Loan #: XXXXXX6774    Client:    TIAA Bank - Loss Mitigation

| Photos | |
|---|---|



Subject (Front View)

Subject (Front View)

Address Verification

**Exhibit 5**

**SERVICELINK**

**Broker Price Opinion Exterior**

Order #: ▮▮▮▮▮▮    Loan #: XXXXXX6774    Client:   TIAA Bank - Loss Mitigation

| Photos |
|--------|



Street View

Street View

Sales Comp 1

# Exhibit 5

**SERVICELINK**

**Broker Price Opinion Exterior**

Order #: ▮▮▮▮▮    Loan #: XXXXXX6774    Client:   TIAA Bank - Loss Mitigation

| Photos |
|---|



Sales Comp 2



Sales Comp 3



Listed Comp 1

## Exhibit 5

**SERVICELINK**

**Broker Price Opinion Exterior**

Order #: ▮▮▮▮▮▮    Loan #: XXXXXX6774    Client:  TIAA Bank - Loss Mitigation

| Photos |
|---|



Listed Comp 2

Listed Comp 3

Signature

Exhibit 5

**SERVICELINK**                                                      **Broker Price Opinion Exterior**

Order #: ▮▮▮▮▮▮          Loan #:  XXXXXX6774          Client:    TIAA Bank - Loss Mitigation

## State Specific Language

This analysis and evaluation of an interest in real property is prepared for the lender/client, to be used for internal purposes only. This document is not an appraisal, should not be used as such, and has not been performed in accordance with the Uniform Standards of Appraisal Practice. The agent submitting this report represents that he/she does not have an interest in the subject property, and the BPO Provider's price opinion of the subject property is unbiased and objective.

Exhibit 5

| State | Statement |
|---|---|
| Arkansas | **Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained.** **Pursuant to Ark. Code. Ann. § 17-42-110(d), a broker price opinion or market analysis issued by a real estate licensee shall not contain the terms "market value", "appraised value", or "appraisal". Any reference in the report to a specific marketing time period is for illustrative purposes only and does not obligate the licensee or broker to sell the property within the stated timeframe or act as a representation or guarantee that the property will be sold within such timeframe. Unless otherwise indicated, the broker price opinion assumes without investigation a fee simple title ownership interest without any reservation of minerals, subsurface rights, or otherwise. This broker price opinion report is to be used solely for purposes allowed by state and federal law. If the report is to be used for any purpose not specifically allowed by state and federal law, legal counsel should be consulted.** |
| Colorado | This evaluation was prepared by a licensed real estate broker and is not an appraisal. This evaluation cannot be used for the purposes of obtaining financing. |
| Delaware | **Notwithstanding any language to the contrary contained herein, this Competitive Market Analysis is NOT an appraisal of the market value for property and is not intended to be used for any legal purpose including approval of a mortgage loan, modification of a mortgage loan, divorce/property separation, estate settlement, bankruptcy proceedings or any other purpose where real estate value is needed. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained.** |
| Hawaii | This opinion as to the estimated price of real estate is not an appraisal. |
| Idaho | Unless the broker is licensed under the Idaho Real Estate Appraisers Act, Chapter 41, Title 54, Idaho Code, this report is not intended to meet the Uniform Standards of Professional Appraisal Practice. The broker's price opinion is not intended to be an appraisal of the market value of the property, and if an appraisal is desired, the services of a licensed or certified appraiser should be obtained. |
| Illinois | This is a broker price opinion/comparative market analysis, not an appraisal of the market value of the real estate, and was prepared by a licensed real estate broker or managing broker, not by a State certified real estate appraiser. |
| Maine | **This opinion or appraisal was prepared solely for the client, for the purpose and function stated in this report and is not intended for subsequent use. It was not prepared by a licensed or certified appraiser and may not comply with appraisal standards of the uniform standards of professional appraisal practice.** |
| Michigan | **This is a market analysis, not an appraisal and was prepared by a licensed real estate broker or associate broker, not a licensed appraiser.** |
| Minnesota | This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained. |

# Exhibit 5

| Mississippi | This opinion is not an appraisal. It is an opinion of value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained. This opinion may not be used by any party as the primary basis to determine the value of a parcel of real property for a mortgage loan origination, including first and second mortgages, refinances or equity lines of credit. |
|---|---|
| Missouri | This is not an appraisal. |
| Nebraska | **This opinion or analysis is not an appraisal. It is intended only for the benefit of the addressee for the purpose of assisting buyers or sellers or prospective buyers or sellers in deciding the listing, offering or sale price of the real property or for lending purposes in a transaction other than a federally related transaction, or for real property tax appeal purposes. This opinion or analysis is not governed by the Real Property Appraiser Act.** |
| Nevada | **Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained.** |
| New Jersey | **This is not an appraisal and should not be considered the equivalent of an appraisal.** |
| North Carolina | This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser shall be obtained. This opinion may not be used by any party as the primary basis to determine the value of a parcel of or interest in real property for a mortgage loan origination, including first and second mortgages, refinances, or equity lines of credit. |
| Ohio | The valuation used for the purposes of the application was obtained from a market analysis or price opinion or automated valuation model report and not from a person licensed or certified under Ohio Revised Code §4763.19. |
| Oregon | This report is not intended to meet the requirements set out in the Uniform Standards of Appraisal Practice. This report is not intended as an appraisal and if an appraisal is desired, the services of a competent professional licensed appraiser should be obtained. |
| Pennsylvania | This analysis has not been performed in accordance with the Uniform Standards of Professional Appraisal Practice which requires valuers to act as unbiased, disinterested third parties with impartiality, objectivity and independence and without accommodation of personal interest. It is not to be construed as an appraisal and may not be used as such for any purpose. |
| Rhode Island | This opinion or analysis is not a certified appraisal or an appraisal that conforms to the Uniform Standards of Professional Appraisal Practice (USPAP). It is intended only for the benefit of the addressee for the purpose of assisting buyers or sellers or prospective buyers or sellers in deciding the listing offering, or sale price of the real property and not for any other purpose, including but not limited to, lending purpose excepting that specifically provided under R.I. Gen. Laws § 5-20.7-3. |
| South Carolina | This market analysis may not be used for the purposes of obtaining financing in a federally-related transaction. |
| Tennessee | This is not an appraisal. |
| Texas | This represents an estimated sale price for this property. It is not the same as the opinion of value in an appraisal developed by a licensed appraiser under the Uniform Standards of Professional Appraisal Practice. |
| Virginia | This is not an appraisal performed in accordance with the Uniform Standards of Professional Appraisal Practice. Nor is this an appraisal as defined in Section 54.1-2009 of the Code of Virginia. |
| Washington | This is not an appraisal as defined in chapter 181.140 RCW and has been prepared by a real estate licensee, licensed under chapter 18.85 RCW. It has not been prepared by a state-certified or state-licensed real estate appraiser acting under their capacity as a licensee under chapter 18.140 RCW. |

# Exhibit 5

Wyoming    This is an opinion of price and is not a certified appraisal of the market value of the property. If such an appraisal is desired, the service of a certified appraiser must be obtained.

Exhibit 5